ORIGINAL

FILED
CLERK, U.S DISTRICT COURT

SEP 2 6 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority   X
Send       X
Enter      X
Closed     ___
JS-5/JS-6  ___
JS-2/JS-3  ___
Scan Only___

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PERFECT 10, INC.,                  )
                                   )   CV 01-02595 LGB (SHx)
            Plaintiff,             )
                                   )
       v.                          )
                                   )   ORDER DENYING IN PART AND
                                   )   GRANTING IN PART CYBERNET
                                   )   VENTURES, INC.'s MOTION
CYBERNET VENTURES, INC.,           )   TO DISMISS AND MOTION FOR
et al.                             )   A MORE DEFINITE STATEMENT
                                   )   AND DENYING CYBERNET'S *EX*
                                   )   *PARTE* "SUGGESTION OF LACK
            Defendants             )   OF JURISDICTION"
                                   )
                                   )
_____)

## I.   INTRODUCTION

This action springs from Perfect 10, Inc.'s ("Perfect 10")
allegations that defendant Cybernet Ventures, Inc. ("Cybernet"),
a corporation running a web-service called "Adult Check," and
other defendants infringe Perfect 10's copyrights, violate
Perfect 10's trademark rights and otherwise engage in rampant
unfair business practices.

Currently before the Court is Cybernet's motion to dismiss
under Rule 12(b)(6) or, in the alternative for a more definitive
statement, further supporting papers, and Perfect 10's opposition

ENTERED ON ICMS

SEP 2 7 2001

CV

53

1 | papers.

2

3 | **II.   FACTUAL BACKGROUND**

4 | The followings facts are taken from Perfect 10's Second

5 | Amended Complaint ("2AC"), drawing inferences in Perfect 10's

6 | favor:[1]

7

8 | Perfect 10 publishes an adult magazine and runs an internet

9 | website. 2AC ¶ 17. Both the magazine and the website share the

10 | Perfect 10 name. Id. The magazine's circulation exceeds 90,000

11 | per issue, while the website receives over 100,000 different

12 | visitors each month. Id.

13 | Perfect 10 has registered copyrights in its magazines, as

14 | well as some videos and calendars. Id. ¶¶ 18, 67, Ex. C. Perfect

15 | 10 claims that these copyrights cover *all* the material within

16 | each, as that material is original to Perfect 10. Id. ¶ 70.

17 | Defendant Cybernet runs a website located at

18 | www.adultcheck.com ("the Adult Check site"). Id. ¶ 24. The

19 | premise of the Adult Check site centers on its functioning as a

20 | combination gateway and quality assurance site for a number of

21 | other websites. Id. at ¶¶ 24-28. For customers, by paying a fee

22 | to Adult Check they can access and view the content on any of the

23 | related sites within the Adult Check "family." Id. ¶ 25. These

24 | sites are linked to the Adult Check site, which provides a

25

26 | [1]See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480,

27 | 1484 (9th Cir. 1995)

28 | 2

centralized "menu" for Adult Check customers. Id. ¶ 26. Some of
these sites are exclusive to Adult Check members. Id. ¶ 25.
Further, Adult Check contains assurances that it monitors the
quality of the various sites. Id. ¶ 28.

The Adult Check site asserts that "websites in the . . .
program must be unique and they must pass a rigorous review from
our staff to ensure that our customers are receiving a premium
entertainment experience." Id. The site advertises over 10,170
hand-selected sites. Id.

The benefit for the affiliated websites within the Adult
Check family is two-fold.[2] First, Cybernet pays a portion of its
revenues to these websites. Id. ¶ 25. Second, the assurance that
Adult Check provides to customers presumably increases the
likelihood of visits to the sites, thereby increasing their
value. Id. ¶¶ 26, 28. The benefits of the system to the
affiliated sites is highlighted by the way affiliated sites
automatically direct non-Adult Check users to the Adult Check
site when they attempt to enter one of the affiliated sites
without using Adult Check. Id. ¶ 29.

The exact relationship between Cybernet, its Adult Check
site and the affiliated sites is unclear. On the one hand, the
Adult Check site, owned by Cybernet, advertises that it acts as a
"partner" with the affiliated websites–going so far as to call
the webmasters of such sites "Adult Check Webmasters." Id. ¶ 27.

---

[2]When referring to the combination of the Adult Check site
and the websites affiliated with it, the Court will refer to the
"Adult Check family," in contrast to the "Adult Check site."

3

1  On the other, the rigorous review mentioned above and the
2  affiliated status of the websites leaves open the possibility
3  that the websites linked to Adult Check are owned or run by other
4  entities.
5      Perfect 10 has a variety of problems with the sites within
6  the Adult Check family. Those problems have led to the present
7  action. Apparently some sites copy images from Perfect 10's
8  copyrighted works. Id. ¶ 33. Some sites include the Perfect 10
9  trademark, suggesting affiliation with Perfect 10; connection
10 with Perfect 10 for pictures not related to Perfect 10's
11 copyrights; or Perfect 10's approval of possible copying on the
12 site. Id. ¶¶ 92, 93. Additionally, a variety of sites advertise
13 pictures of celebrities in sexually explicit poses, but when one
14 goes to the site, the pictures involve the bodies of different
15 people with the heads of celebrities superimposed. Id. ¶¶ 35, 36.
16 Finally, some of the sites use pictures of models without their
17 permission. Id. ¶¶ 33, 35, 36. Perfect 10 claims some of these
18 models have assigned Perfect 10 their right of publicity, while
19 other pictures violate the publicity rights of third persons with
20 whom Perfect 10 has no direct relationship. Id. ¶¶ 33, 35.
21     Perfect 10 alleges that Cybernet is not only aware of these
22 various problems, but that it actively encourages these
23 activities. Id. ¶¶ 27-32. According to Perfect 10, by
24 disregarding the laws of copyright, trademark, publicity and
25 unfair competition, the Adult Check family is able to entice more
26 users and to provide its services at lower costs. Id. ¶¶ 1-3.
27
28                          4

1 | **III. ANALYSIS**

2

3 |     **A. Legal Standard**

4 |     Federal Rule of Civil Procedure 12(b)(6) provides for

5 | dismissal when a complaint fails to state a claim upon which

6 | relief can be granted. See Fed. R. Civ. P. 12(b)(6). A complaint

7 | fails to state a claim if it does not allege facts necessary to

8 | support a cognizable legal claim. See Balistreri v. Pacifica

9 | Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Robertson v.

10 | Dean Witter Reynolds , Inc., 749 F.2d 530, 533-34 (9th Cir.

11 | 1984).

12 |     In reviewing a Rule 12(b)(6) motion, the court must presume

13 | the truth of the factual allegations in the complaint, and draw

14 | all reasonable inferences in favor of the non-moving party. See

15 | Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th

16 | Cir. 1995); see also Usher v. City of Los Angeles, 828 F.2d 556,

17 | 561 (9th Cir. 1987). Dismissal under Rule 12(b)(6) is appropriate

18 | "only if it is clear that no relief could be granted under any

19 | set of facts that could be proved consistent with the

20 | allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)

21 | (citations omitted). The issue is not whether the plaintiff will

22 | ultimately prevail, but whether the plaintiff is entitled to

23 | offer evidence to support the plaintiff's cliaim. See Usher, 828

24 | F.2d at 561.

25 |     Under Federal Rule of Civil Procedure 8, a pleading shall

26 | contain "a short and plain statement of the claim showing that

27

28 |                                5

the plaintiff is entitled to relief." Moreover, "[t]he pleadings
need not identify any particular legal theory under which
recovery is sought." <u>Crull v. Gem Ins. Co.</u>, 58 F.3d 1386, 1391
(9th Cir. 1995). It is enough that the complaint gives the
defendant fair notice of what the plaintiff's claim is and the
grounds upon which it rests so that the defendant can frame a
responsive pleading. <u>See</u> <u>Leatherman v. Tarrant County Narcotics</u>
<u>Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993)
(citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). The Supreme
Court has explained that the "liberal system of 'notice
pleading'" does not require a claimant to set out in detail the
facts upon which it bases its claim.

**B. Applying the standard**

Here, Perfect 10 identified ten causes of action against
Cybernet:

> 1) copyright infringement (17 U.S.C. § 501 <u>et seq.</u>)
>
> 2) trademark infringement (15 U.S.C. §§ 1114, 1125)
>
> 3) trademark disparagement (15 U.S.C. § 1125(a))
>
> 4) trademark dilution (15 U.S.C. § 1125(c); Cal. Bus. &
>    Prof. Code § 14330; and common law)
>
> 5) wrongful use of a registered trademark (Cal. Bus. &
>    Prof. Code § 14335)
>
> 6) violation of publicity rights (Cal. Civil Code §
>    3344; and common law)

6

1        7) unfair competition (Lanham Act § 43(a); Cal. Bus. &

2           Prof. Code § 17200)

3        8) false advertising (Cal. Bus. & Prof. Code § 17500 et

4           seq.)

5        9) civil RICO,[3] investment of proceeds (18 U.S.C. §

6           1962(a))

7        10)civil RICO, participation (18 U.S.C. § 1962(c))

8

9      Defendant Cybernet challenges each and every one of these

10  theories in its motion to dismiss. In the alternative it moves

11  for a more definite statement with regard to each claim. The

12  Court will analyze each claim in turn.[4]

13

14      **1. Copyright Infringment**

15      Cybernet argues that the complaint fails to allege a valid

16  claim of copyright infringement. Def. Mem. at 4-5. Cybernet bases

17  this argument on the failure of Perfect 10 to state, in its

18  complaint, every copyright relied on, every individual image in

19  the magazines that is being infringed, every image on specific

20  web pages that does infringe, or the dates of any infringement.

21  Id. This misconstrues the burden Perfect 10 faces in the

22  _____

23      [3]Racketeering Influenced and Corrupt Organizations Act.

24      [4]At the outset, the Court rejects Cybernet's argument to
dismiss based on Perfect 10's failure to allege a detailed basis

25  for jurisdiction in the first paragraph of the Second Amended
Complaint. See Local Rule 3.7.1. Perfect 10's original complaint

26  complied with the Local Rule and the current complaint mentions
federal question jurisdiction in the first paragraph, while

27  detailing the basis in ¶ 5. 2AC ¶¶ 1, 5.

28                          7

1  pleadings stage. Copyright claims need not be pled with

2  particularity. See, e.g., Mid America Title Co. v. Kirk, 991 F.2d

3  417, 421 (6th Cir. 1993). As courts have noted in recent, post-

4  Leatherman cases, complaints simply alleging present ownership by

5  plaintiff, registration in compliance with the applicable statute

6  and infringement by defendant have been held sufficient under the

7  rules. Id. at 421 n.8 (quoting Wright & Miller, Federal Practice

8  and Procedure § 1237, at 283 (1990)); Jetform Corp. v. Unisys

9  Corp., 11 F.Supp. 2d 788, 790 (rejecting heightened pleading

10 based on Leatherman).

11      The purpose of modern rules of civil procedure is to avoid a

12 regime of heightened pleading with the exceptions listed in

13 Federal Rule of Civil Procedure 9(b). See Leatherman, 507 U.S. at

14 168 ("we said in effect that [Rule 8] meant what it said"). Here

15 Perfect 10 alleges the existence of hundreds, even thousands of

16 infringing photographs within the various websites that Adult

17 Check has placed within its "family." See, e.g., 2AC ¶¶ 38, 40,

18 43, 48, 53, 59, 61. Requiring a statement of each and every

19 example would defeat the regime established by Rule 8.

20      Similar cases in the Internet area strongly suggest that

21 Cybernet's pleading arguments are not just legally incorrect, but

22 also incompatible with the types of claims involved in this case.

23 In A & M Records, Inc. v. Napster, Inc., the Ninth Circuit upheld

24 the district court's finding that plaintiffs had demonstrated a

25 likelihood of success on their copyright infringement claims. See

26 239 F.3d 1004, 1022, 1024 (9th Cir. 2001). In that case, the

27

28                                    8

1  district court was confronted with allegations of massive

2  infringement and relied on samples to establish the scope of the

3  infringement. See A&M Records, Inc. v. Napster, Inc., 114 F.Supp.

4  2d 896, 902, 911 (N.D. Cal. 2000) aff'd in part, rev'd in part by

5  239 F.3d 1004 (9th Cir. 2001) as amended by (April 3, 2001).

6  Moreover, because of the user-dependent nature of this copyright

7  infringement, the number could vacillate hour-to-hour, day-to-

8  day. See Napster, 239 F.3d at 1011-13 (describing file-sharing

9  process). There is no indication, however, that the district

10  court required the plaintiffs to specify each and every alleged

11  violation of copyright law in their complaint. Cf id. at 1027

12  (requiring plaintiffs to provide Napster notice of infringed

13  works as part of injunctive relief).

14      Similarly, in Playboy Enterprises v. Russ Hardenburgh, Inc.,

15  the district court was faced with a summary judgment motion on a

16  copyright claim involving ninety-nine images. See 982 F.Supp.

17  503, 506-07 (N.D. Ohio 1997). This number was then reduced to

18  twenty images. See id. Following scrutiny of tapes supplied by

19  the FBI, however, the plaintiff then brought a summary judgment

20  motion for 392 additional copies. See id. at 507. Although never

21  expressly discussed, this wide variation in number, particularly

22  considering the much smaller initial investigation, supports this

23  Court's conclusion that Rule 8 does not require the highly

24  detailed pleading demanded by Cybernet.

25      The question thus boils down to whether or not Cybernet has

26  fair notice of the allegations against it. See Leatherman, 507

27

28                                    9

1  U.S. at 168. Perfect 10's complaint identifies copyrights

2  involving their magazines and identifies ownership of the

3  pictures within the magazines.[5] 2AC ¶¶ 38-70. This is sufficient

4  to notify Cybernet as to the type of infringing conduct and the

5  source of the claims. Moreover, the complaint specifically

6  identifies websites where infringing conduct can be found, and

7  alleges that some of this infringing conduct still carries

8  Perfect 10's identification. <u>Id.</u> Further details can be elicited

9  during the discovery stage. <u>See</u> <u>Mid America Title</u>, 991 F.2d at

10  422-23 (recognizing similar argument more suited for summary

11  judgment than motion to dismiss).

12      Moreover, this information is sufficient to guide Cybernet

13  in its responsive pleadings. Cybernet is either aware of

14  potential infringement or it is not. <u>See</u> 2AC ¶ 31. It is a true

15  partner with each and every Adult Check Webmaster, some Adult

16  Check Webmasters, or none. <u>See</u> 2AC ¶ 27. It either performs a

17  "rigorous review" of the material on the affiliated websites or

18  it does not. <u>See</u> 2AC ¶ 28. The list goes on. The ever-shifting

19  nature of the Internet and the potential scale of the allegations

20  involved undercut Cybernet's arguments; Rule 8 conclusively

21  refutes them. Perfect 10 has thus sufficiently alleged violations

22  of the copyright laws by Cybernet.[6]

23  _____

24      [5]This identification by Perfect 10 that it owns individual
   pictures defeats Cybernet's "suggestion for lack of jurisdiction"
25  pursuant to Fed. R. Civ. P 12(h)(3), and Cybernet's *ex parte*
   application on that ground is hereby DENIED.

26      [6]The Court also finds that this vagueness argument fails to
27  the extent Cybernet desires to require Perfect 10 to identify the

28                              10

1             **2. Direct Copyright Infringement**

2       Cybernet, however, argues that even if these pleadings are

3 sufficient, Perfect 10 has failed to adequately plead a direct

4 copyright infringement claim. Def. Mem. at 6. Cybernet relies on

5 two cases: <u>Religious Technology Center v. Netcom On-Line</u>

6 <u>Communication Services, Inc.</u>, 907 F.Supp. 1361 (N.D. Cal. 1995)

7 and <u>Bernstein v. J.C. Penney, Inc.</u>, 50 U.S.P.Q. 2d 1063 (C.D.

8 Cal. 1998). Based on these, Cybernet argues that a website

9 provider like itself can <u>never</u> be directly liable for copyright

10 infringement carried out by others using the service. Def. Mem.

11 at 6. Neither case supports such a broad proposition, nor do

12 these cases adequately support Cybernet's position on the facts

13 of this case.

14     <u>J.C. Penney</u> is a district court case that held an on-line

15 website could not be liable for copyright infringement based on

16 links to other websites. 50 U.S.P.Q. 2d at 1064. The case lacked

17 a rationale, however, and thus fails to persuade the present

18 Court. See <u>id</u>. <u>Religious Technology</u>, on the other hand, refused

19 to allow for the possibility of finding direct infringement for

20 an electronic bulletin board service (BBS) provider, where

21 posters on the board were infringing copyrights. <u>See</u> 907 F.Supp.

22 at 1372. The district court hinged its conclusion on the lack of

23 a volitional act by the BBS, <u>see</u> <u>id.</u> at 1370, and found that any

24 element of knowledge was relevant only to contributory

25 _____

26 specific registration numbers of third parties. It is enough that
Perfect 10 adequately identify the location of these pictures for

27 Cybernet. <u>See</u> <u>infra</u> (discussing third-party copyrights).

28                             11

infringement, not direct infringement. See id. at 1372. At the
same time, in dicta, the court implied that a BBS could or should
never be found liable for direct infringement. See id.

Here, however, the allegations counsel against following
Religious Technology's example. Perfect 10 alleges that Cybernet
is a partner of the various websites. 2AC ¶ 27. Cybernet may have
a direct role in the infringement. Until the exact relationship
between Cybernet and the potentially infringing websites is
established, the Court cannot conclude that no set of facts
exists that could make Cybernet liable for direct infringement.
Thus, the motion to dismiss the allegation of direct copyright
infringement must be denied.

### 3. Trademark Infringement Claims—Are They Too Vague?

Cybernet also attacks Perfect 10's allegations in the second
through fifth claims, all relating to trademark rights, as
"hopelessly vague." Def. Mem. at 7. For reasons substantially
similar reasons to those that defeat the vagueness argument
against the copyright claim, it must be rejected against the
trademark claims.[7] Perfect 10 identifies its trademarks and even

---

[7]In a microcosm of its attack on the pleadings as a whole,
Cybernet attacks Perfect 10's attachment of trademark
registrations, domestic and foreign. Def. Mem. at 7 n.9.
Cybernet protests because it views the foreign trademark
registrations as unnecessary. Id. It also objects to language
such as, "Attached . . . are trademark registrations that have
been infringed by the defendants," because it is the trademarks
that are infringed, not the registrations. Id. It is this hair-
splitting approach to pleadings that Rule 8 is meant to relegate
to the dust-bins of legal history.

points to specific websites with the infringing trademark usage.
2AC ¶¶ 86, 94. Although no specific image is identified, given
Perfect 10's allegations concerning the scope of the alleged
violations and Cybernet's alleged role, Cybernet is put on notice
of the claims' nature and has enough information to draft its
pleadings. See Leatherman, 507 U.S. at 168.

### 4. Direct Trademark Infringement

Paralleling the result of Cybernet's objections to the
copyright claims, Cybernet's objection to the theory of direct
trademark infringement is misplaced, Def. Mem. at 7, at least
until the exact relationship between Cybernet and the affiliated
websites is established. See supra. The partnership allegations
based on Cybernet's own website, if true, may provide further
factual support for the direct infringement claim. Nor is
Cybernet's objection that it cannot be a direct and indirect
infringer at the same time well-taken. Def. Mem. at 8. Pleading
can be in the alternative. See Fed. R. Civ. P. 8.

### 5. Do the Trademark Claims Duplicate the Copyright Claim?

Cybernet also argues that Perfect 10's trademark claims are
duplicative of its copyright claims and therefore should be
dismissed. Def. Mem. at 8. In analyzing this, the key language in
the complaint is found in the allegation that web pages "contain
a Perfect 10 copyright notice and/or a caption which states

13

1  'Perfect 10.'" 2AC ¶ 92 (emphasis added). Although Cybernet's

2  argument may have some application to those situation where the

3  infringing picture <u>only</u> contains the copyright notice or leaves

4  it out, <u>cf. Richard Feiner & Co., Inc. v. H.R. Indus., Inc.</u>, 10

5  F.Supp. 2d 310, 316 (S.D.N.Y. 1998), it has no application to

6  those web pages that contain <u>both</u> the picture and any registered

7  trademarks or those web pages that only contain the registered

8  trademark.

9      Further, whatever the persuasive value of Cybernet's case,

10 this Court is bound by the holding in <u>Nintendo of America, Inc.</u>

11 <u>v. Dragon Pacific Int'l.</u>, 40 F.3d 1007, 1010-11 (9th Cir. 1994).

12 In <u>Nintendo</u>, the Ninth Circuit upheld the awarding of both

13 copyright and trademark damages because the copies of the video

14 games involved were also identified as Nintendo games. <u>See</u> <u>id.</u> at

15 1009. As the court observed, "[p]ut together selling the

16 cartridges may have been one act, but it was two wrongs." Based

17 on Perfect 10's pleadings this language decides the matter in

18 Perfect 10's favor. <u>See</u> <u>also</u> <u>Lyons Partnership, L.P. v. AAA</u>

19 <u>Entertainment Inc.</u>, 1999 WL 1095608 *1, *10 (S.D.N.Y. 1999)

20 (upholding copyright and trademark damages for use of Barney

21 costume, no trademark identification, citing and following

22 <u>Nintendo</u>).

23     In reply, Cybernet attempts to distinguish <u>Nintendo</u> by

24 pointing out that this is a motion to dismiss whereas <u>Nintendo</u>

25 involved an award of damages for both claims. Def. Reply at 8.

26 Given that the monetary awards in <u>Nintendo</u> necessarily required

27

28                                  14

the validity of <u>both</u> the trademark and copyright claims, the Court does not see how the distinction helps Cybernet. Because Perfect 10 has adequately stated a claim under <u>Nintendo</u>, the motion to dismiss on the grounds of overlap with the copyright claims must be denied.[8]

### 6. Dilution

Cybernet claims that Perfect 10's dilution claim is so lacking in detail that Cybernet cannot respond. Def. Mem. at 9. For the same reasons this argument fails in the copyright and general trademark contexts, it fails again here. <u>See</u> <u>supra</u>. Similarly, Cybernet again tries to distance itself from its affiliated websites in contesting the "direct" dilution claim. Def. Mem. at 9. Once again, Perfect 10's allegations of partnership are enough to defeat the motion to dismiss for this claim.[9] <u>See</u> <u>supra</u>

### 7. Wrongful Use of Registered Mark

_____

[8]Cybernet also objects to Perfect 10's allegations referencing statute sections, but not specific sub-sections. Def. Mem. at 8 n.10.  Neither are required by Rule 8.

[9]Cybernet's short statement regarding the lack of an indirect dilution action is insufficient argument for such a potentially contentious point. <u>Compare Lockheed Martin Corp. v. Network Solutions, Inc.</u>, 194 F.3d 980 ("Although courts have discussed contributory dilution, no appellate court or statute has yet established the cause of action") <u>with</u> 4 <u>McCarthy on Trademarks and Unfair Competition</u> § 25:21.2 at 25-46 (no authority directly on point, no logical reason not to apply contributory theory to anti-dilution law, citing case authority). The Court therefore does not address this possibility.

1    Cybernet repeats its arguments against the trademark claims

2  as a whole as its argument against the wrongful use claim. Def.

3  Mem. at 9-10. Just as these arguments were insufficient in that

4  context, they fail to justify dismissing Perfect 10's wrongful

5  use of a registered mark claim. See supra.

6

7              **8. Right of Publicity-Failure to "use"**

8        As for Perfect 10's right of publicity claim, Cybernet

9  raises the characterization of itself as simply an indexer and

10  linker of websites. Def. Mem. at 10. As such, Cybernet maintains

11  that it did not use anyone's identity. Id. This again ignores

12  Perfect 10's allegation that Cybernet holds itself out as a

13  partner with its Adult Check Webmasters. Just as with the other

14  "direct" claims, this allegation suffices to state a claim

15  against Cybernet. See supra.

16

17            **9. Right of Publicity-Insufficient Notice**

18        Cybernet also argues, however, that Perfect 10 has not

19  provided Cybernet with fair notice of whose rights of publicity

20  have been violated. Def. Mem. at 10-11. Perfect 10 has alleged

21  that third parties have assigned these rights to Perfect 10, and

22  there is an implication that Perfect 10 has these rights for

23  every picture in every Perfect 10 magazine. 2AC ¶ 119. Unlike the

24  copyright claims, however, where the pictures alone provide

25  sufficient indication of the legal violation, the right of

26  publicity does attach to identifiable persons. See Downing v.

27

28                              16

1  Abercrombie & Fitch, 2001 WL 1045646 (9th Cir. 2001). Perfect 10

2  needs to identify these people in order to give Cybernet fair

3  notice of these alleged violations. This is particularly

4  appropriate where, as here, a plaintiff also alleges violations

5  of other, non-assigned, third-party rights. The Court thus finds

6  that Cybernet's alternate request for a more definite statement

7  is appropriately granted on the right of publicity claim.[10]

8

9         **10. Unfair Competition**

10        Cybernet relies on a misstated holding of the California

11  Supreme Court in its attempt to get the unfair competition and

12  false advertising claims dismissed. Def. Mem. at 12. Cybernet

13  argues that because Perfect 10 failed to allege "an incipient

14  violation of antitrust law" the claim must be dismissed. Id.

15        California's unfair competition law is broadly phrased to

16  prohibit "any unlawful, unfair or fraudulent business act or

17  practice and unfair, deceptive, untrue or misleading

18  advertising." Cal. Bus. & Prof. Code § 17200. In Cel-tech

19  Communications, Inc. v. Los Angeles Cellular Telephone Co., the

20  California Supreme Court clarified the meaning of the "unfair"

21  arm of this prohibition and adopted the language Cybernet sets

22  forth. See 20 Cal. 4th 163, 186-87 (Cal. 1999). This decision,

23  however, did not purport to alter the analysis of the other two

24  _____

25        [10]The Court does not assume and Perfect 10's complaint gives
    no indication that the identity of the people in the pictures at
26  issue is either identified in the pictures or immediately
    obvious, further exacerbating the Court's concerns over fair
27  notice on this count.

28                              17

1 varieties of unfair competition–"unlawful" and "fraudulent"

2 activity. See id. at 180, 187 n.12.

3     Even if Perfect 10 could not win under an "unfair" theory,[11]

4 the existence of other potentially successful avenues under this

5 statute--based on Cybernet's alleged unlawful conduct, if nothing

6 else-are enough to defeat the motion to dismiss. See, e.g.,

7 Denbicare U.S.A., Inc. v. Toys "R" Us, Inc., 84 F.3d 1143, 1152

8 (9th Cir. 1996) (trademark and California unfair competition

9 claims rising and falling together).[12]

10

11     **11. Unfair Competition–Copyright Claims Preempted?**

12     Cybernet also argues that the copyright-related claims

13 cannot be used to establish liability under this claim, because

14 the Copyright Act preempts state law in this context. Def. Mot.

15 at 13-14. Perfect 10 does not dispute this assertion as it

16 relates to Perfect 10's copyrights, but replies that its unfair

17 competition claim is actually based on:

18

19     1) deception of consumers regarding the sponsorship,

20        identity and characteristics of content on the websites;

21     2) violations of the right of publicity;

22     3) misappropriation of third-party content, including

23 _____

24    [11]But see Pl. Opp. at 13 (arguing implicit in allegations is an "incipient violation of anti-trust law").

25    [12]Cybernet also argues that the unfair competition claim is

26 doomed by the arguments applied to the trademark claim. Def. Mem. at 13. They fail in the context as well, and for the same

27 reasons. See supra.

28

1 counterfeit celebrity pictures; and

2 4) willful infringement of third-party copyrights.

3 Pl. Opp. at 14.

4

5 The Court dismisses so much of the unfair competition claims

6 as they relate to copyrights, whether Perfect 10's or third

7 parties', based on preemption. Although California law may allow

8 plaintiffs to assert third party claims, federal copyright law

9 only allows the owner of a copyright to bring suit. <u>See</u> 5 U.S.C.

10 § 501(b) (stating legal or beneficial owner entitled to sue);

11 <u>ABKCO Mustic, Inc. v. Harrisongs Music, Ltd.</u>, 944 F.2d 971, 980

12 (2d Cir. 1991) (Copyright Act not permitting copyright holders to

13 choose third parties). Allowing Perfect 10 to defeat this express

14 requirement through application of state law is incompatible with

15 the federal scheme of copyright protection. <u>See</u> <u>Kodadek v. MTV</u>

16 <u>Networks, Inc.</u>, 152 F.3d 1209, 1212-13 (9th Cir. 1998) (state-law

17 unfair competition claim preempted by Copyright Act where rights

18 were equivalent and fell within copyright subject matter).

19 This leaves Perfect 10 with the other bases for its unlawful

20 competition claim. To the extent this claim relies on the

21 violations of the rights of publicity, both of Perfect 10 models

22 through assignment and of other third parties, it suffers from

23 the same defects as the initial right of publicity claim.[13] <u>See</u>

24 <u>supra</u>. Perfect 10 must therefore clarify whose rights of

25 ────────────

26 [13]These claims are not preempted. <u>See</u> <u>Downing</u>, 2001 WL

1045646 (statutory and common law right of publicity claims not

27 preempted by Copyright Act).

28 19

1  publicity are violated, as the Court GRANTS the motion for a more

2  definite statement as to this portion of the claim.

3       As for deception, Perfect 10's allegations concerning

4  celebrity sites and sexually explicit pictures are sufficiently

5  particular to meet California's pleading requirements. See Khoury

6  v. Maly's of California, Inc., 14 Cal. App. 4th 612, 619 (Cal.

7  App. Ct. 1993) (requiring facts pled with "reasonable

8  particularity"). Nor are the examples mere "puffery." See Haskell

9  v. Time, Inc., 857 F.Supp. 1392, 1399 (E.D. Cal. 1994). It is not

10 a "vague, highly subjective claim" when one attaches "You Gotta

11 Love Jennifer Love Hewitt Nudes" to a web link. See id. Rather,

12 one could reasonably expect to find Jennifer Love Hewitt nude

13 images on a site with that label.[14] 2AC ¶ 35. The declaration of

14 Britney Spears and her manager give ample evidence of the nature

15 and extent to which Perfect 10 is alleging these deceptive

16 celebrity-directed sites are found in the Adult Check family and

17 on the Adult Check site's links. 2AC, Ex. A. Thus, Perfect 10 has

18 adequately stated the facts supporting this portion of the unfair

19 competition claim.

20

21       **12. Unfair competition-standing**

22       Cybernet does not rest content with challenging the

23 substance of Perfect 10's unfair competition claim. Cybernet also

24 _____

25       [14]Unlike some of Cybernet's other arguments, Cybernet only
26 targets these specific examples as "puffery." The Court finds,
   however, that the allegations regarding presumably current links
27 are sufficiently particular for pleading purposes.

argues that Perfect 10 lacks standing to bring its claim for injunctive relief in ¶ 137 because it is brought on "behalf of the general public." Def. Mem. at 15. Construed in the light most favorable to Perfect 10, the Court reads this as a request on behalf of itself <u>and</u> the general public. <u>See</u> Cal. Bus. & Prof. Code § 17204 (authorizing action "by any person acting for the interests <u>of itself</u> . . . <u>or the general public</u>").

Read in this light, Perfect 10 has met the constitutional requirements for standing:

1) it has suffered economic injury;

2) that injury is caused, at least in part, by defendants' violations of third-party rights; and

3) enjoining defendants' violations would provide Perfect 10 redress for its injuries.

<u>See Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).

Therefore, Cybernet's standing objections do not support a motion to dismiss on the unfair competition claims.[15]

**13. RICO-general requirements**

Cybernet points to several perceived shortcomings in Perfect

---

[15]The Court restricts its analysis to the Article III standing requirements because <u>neither</u> party addressed the proper legal standard for the prudential limitations on third-party standing in federal court. <u>See</u> <u>Powers v. Ohio</u>, 499 U.S. 400, 410-11 (1991); <u>Viceroy Gold Corp. v. Aubry</u>, 75 F.3d 482, 488-89 (third-party prudential standing test).

1 | 10's two RICO claims:

2

3      1)     Cybernet argues that Perfect 10 has failed to allege

4          "willfulness" as to the copyright infringement. Def.

5          Mem. at 18-19.

6      2)     Cybernet disputes the conclusion that Perfect 10 has

7          pleaded sufficient facts to establish a "pattern of

8          racketeering activity." Id. at 20-21.

9      3)     Cybernet maintains that Perfect 10 lacks standing to

10         sue for the copyright infringement of third-party

11         copyrights. Id. at 21.

12      4)     Cybernet argues that Perfect 10 has failed to identify

13         any injury resulting from the use or investment of

14         racketeering income. Id. at 21-22.

15      5)     Cybernet also argues that Perfect 10 has failed to

16         plead an enterprise distinct from Cybernet. Id. at 22-

17         23.

18      6)     Cybernet further maintains that Perfect 10 has failed

19         to show a nexus between the racketeering and the Adult

20         Check enterprise. Id. at 23-24.

21      7)     Cybernet finally states that Perfect 10 has not alleged

22         a structure of the enterprise "separate and apart from

23         the pattern of racketeering activity" in which the

24         enterprise engages. Id. at 24.

25

26 | Rather than rehash each of these individually and in greater

27

28 |                         22

1  depth than Cybernet has, the Court will move quickly through the
2  arguments.

3      Cybernet has maintained that it is separate from the
4  activities of the websites that make up the Adult Check family,
5  thus effectively conceding a distinct enterprise. See Def. Mem.
6  at 1,6; see also Brady v. Dairy Fresh Products Co., 974 F.2d
7  1149, 1154 (9th Cir. 1992) (discussing relevance of
8  enterprise/person distinction). Moreover, the partnership with
9  the other websites, including the supervisory role Perfect 10
10 alleges for Cybernet would suffice as an organizational
11 structure. See 2AC at ¶¶ 27, 28; see also Chang v. Chen, 80 F.3d
12 1293, 1300 (9th Cir. 1996) ("the involvement of a corporation . .
13 . can satisfy the enterprise element's requirement of a separate
14 structure"). This is reinforced by the funneling aspect Cybernet
15 plays; collecting money for the infringing uses and then routing
16 it to the alleged infringing sites through the Adult Check family
17 structure, establishing a nexus. See 2AC at ¶ 25; see also Sun
18 Savings & Loan Ass'n v. Dierdorff, 825 F.2d 187, 195 (9th Cir.
19 1987) (discussing nexus).

20      Further, Perfect 10 alleges Cybernet is aware that the
21 copying is copyright infringement, that Cybernet claims to know
22 what is going on with each and every site in the Adult Check
23 family, and that Cybernet has actual notice that Perfect 10 did
24 not give these websites permission to use Perfect 10's images.
25 Id. at ¶¶ 31, 27-28, 73. Cybernet has not adequately addressed
26 these allegations and their support for a finding of criminal
27
28                              23

1  willfulness. <u>See</u> Def. Reply at 18-20.

2      As for the pattern of racketeering activity, the broad reach

3  of the alleged infringement, on a variety of sites owned by

4  different individual site owners establishes a sufficient pattern

5  for RICO. <u>See</u> Def. Mem. at 1 (denying ownership of other sites);

6  <u>see also</u> <u>Sun Savings & Loan</u>, 825 F.2d at 191092 (defining

7  pattern, looking for continuity plus relationship). If one

8  considers the alleged third-party copyright violations, the

9  pattern becomes even broader. <u>See, e.g.</u>, 2AC at ¶ 134.

10      This brings the Court to the substantive heart of Cybernet's

11  RICO objections. Cybernet claims that allowing a RICO action for

12  the violation of third-party copyrights violates the exclusive

13  remedies of the copyright laws. Def. Mem. at 19. This Court sees

14  no conflict. Unlike the case with state laws, analyzed earlier,

15  here federal legislation apparently authorizes third-party claims

16  and lists copyright infringement as a predicate act. <u>See</u> <u>Sun</u>

17  <u>Savings & Loan</u>, 825 F.2d at 191-92 (pattern has "same <u>or similar</u>

18  . . . victims," finding pattern in four acts of fraud to third-

19  parties) (emphasis added). Allowing these third-party claims to

20  attach to Perfect 10's first-party claims furthers the broad

21  remedial purpose of RICO and addresses all the injuries Perfect

22  10 perceives. <u>See</u> <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S.

23  479, 497-98 (1985). This Court will not generate a conflict

24  between two federal statutes where it is entirely plausible that

25

26

27

28                                    24

1    none exists.[16] See Morton v. Mancari, 417 U.S. 535, 551 (1974)

2    ("when two statutes are capable of co-existence, it is the duty

3    of the courts . . . to regard each as effective.")

4        Finally, Cybernet argues that the Ninth Circuit has

5    specifically rejected the "reinvestment injury" theory alleged by

6    Perfect 10 under RICO's § 1962(a). Def. Reply at 22. This

7    argument is true, up to a point. Although the Ninth Circuit has

8    rejected a bare "reinvestment theory," it also recognized that a

9    plaintiff may show that the racketeering income was reinvested in

10   a way that hurt the plaintiff. See, e.g., Nugget Hydroelectric,

11   L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 437-38 (9th Cir.

12   1992); Larsen v. Lauriel Investments, 2001 WL 1035289 *1, *12 (D.

13   Ariz. 2001) (finding standing for reinvestment where the

14   reinvestment caused further injury).

15       Assuming for the moment that the relevant "enterprise" is

16   the Adult Check family, taken as a whole, there appears to be two

17   alleged uses of racketeering income: 1) the collection and

18   retention of fees by Cybernet; and 2) Cybernet's sending of fees

19   to the owners of other sites. Perfect 10 has not alleged, for

20   instance, that Cybernet uses the fees so collected to finance

21   expansion or competition against Perfect 10, expand its customer

22   base, or to bring in, acquire and/or pay other, "legitimate"

23

24       [16]The Court reserves the right to revisit this issue if
25   presented with an argument that squarely addresses the
     interrelationship between the civil copyright infringement
26   enforcement provisions and RICO's civil enforcement provisions
     based on criminal copyright acts.
27

28                                25

1  websites within the Adult Check family by offering financial

2  incentives. See Schwartz v. Upper Deck Co., 956 F.Supp. 1552,

3  1559 (S.D. Cal. 1999) (suggesting "competitor who has suffered a

4  competitive injury" because of use of ill-gotten revenues has §

5  1962(a) standing). Without some indication of precisely how

6  Perfect 10's damage is derived from something more than the

7  predicate acts of infringement, Perfect 10 has failed to

8  adequately allege a violation of 18 U.S.C. § 1962(a). See Nugget

9  Hydroelectric, 981 F.2d at 437. Rather than dismiss the complaint

10 at this stage, however, the Court will GRANT Cybernet's motion

11 for a more definite statement as to how, precisely, Perfect 10

12 claims it has been injured by the use or investment of

13 racketeering income by Cybernet.

14

15 **IV. CONCLUSION**

16      For the foregoing reasons, Cybernet's motion to dismiss is

17 DENIED as to the claims for:

18

19          1) copyright infringement (17 U.S.C. § 501 et seq.);

20          2) trademark infringement (15 U.S.C. §§ 1114, 1125);

21          3) trademark disparagement (15 U.S.C. § 1125(a));

22          4) trademark dilution (15 U.S.C. § 1125(c); Cal. Bus. &

23               Prof. Code § 14330; and common law);

24          5) wrongful use of a registered trademark (Cal. Bus. &

25               Prof. Code § 14335);

26          6) violation of publicity rights (Cal. Civil Code §

27

28                                  26

3344; and common law);

7) unfair competition (Lanham Act § 43(a); Cal. Bus. &
   Prof. Code § 17200), except to the extent this is
   based on the violations of third-party copyright
   rights;

8) false advertising (Cal. Bus. & Prof. Code § 17500 et
   seq.);

9) civil RICO, investment of proceeds (18 U.S.C. §
   1962(a)); and

10) civil RICO, participation (18 U.S.C. § 1962(c))

Cybernet's motion to dismiss is GRANTED as to the unfair competition claim, but only to the extent it alleges unfair competition based upon Cybernet's violations of third-party copyrights.

Cybernet's motion for a more definite statement is GRANTED as to the sixth claim for violation of publicity rights; the seventh claim for unfair competition; and the claim for the investment of racketeering proceeds in violation of 18 U.S.C. § 1962(a).

Perfect 10 is therefore ORDERED to file a more definite statement with this Court within twenty (20) days of this Order's filing date.

///

///

///

27

1        Finally, Cybernet's *Ex Parte* "suggestion of lack of
2   jurisdiction" pursuant to Federal Rule of Civil Procedure
3   12(h)(3) is DENIED.
4
5
6
7
8
    **IT IS SO ORDERED.**
9
    Dated:      7/26/01
10
                                   _LOURDES G. BAIRD_
11                                 United States District Judge
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28                            28