ORIGINAL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYBERNET VENTURES, INC., <br> et al. <br><br> Defendants | CV 01-02595 LGB (SHx) <br><br> ORDER GRANTING IN PART <br> AND DENYING IN PART <br> CYBERNET VENTURES, INC. <br> SECOND MOTION TO DISMISS |

## I. INTRODUCTION

This action springs from Perfect 10, Inc.'s ("Perfect 10") allegations that defendant Cybernet Ventures, Inc. ("Cybernet"), a corporation running a web-service called "Adult Check," and other defendants infringe Perfect 10's copyrights, violate Perfect 10's trademark rights and otherwise engage in rampant unfair business practices.

Currently before the Court is Cybernet's motion to dimiss the seventh through tenth claims under Rule 12(b)(6), Perfect 10's opposition papers, and Cybernet's reply as well as other supporting papers.

## II. FACTUAL BACKGROUND

The followings facts are taken from Perfect 10's Third Amended Complaint ("3AC"), drawing inferences in Perfect 10's favor:[1]

Perfect 10 publishes an adult magazine and runs an internet website. 3AC ¶ 16. Both the magazine and the website share the Perfect 10 name. Id. The magazine's circulation exceeds 90,000 per issue, while the website receives over 100,000 different visitors each month. Id.

Perfect 10 has registered copyrights in its magazines, as well as some videos and calendars. Id. ¶¶ 17, 67. Perfect 10 claims that these copyrights cover *all* the material within each, as that material is original to Perfect 10. Id. ¶ 70.

Defendant Cybernet runs a website located at www.adultcheck.com ("the Adult Check site"). Id. ¶ 23. The premise of the Adult Check site centers on its functioning as a combination gateway and quality assurance site for a number of other websites. Id. at ¶¶ 23-27. For customers, by paying a fee to Adult Check they can access and view the content on any of the related sites within the Adult Check "family." Id. ¶ 24. These sites are linked to the Adult Check site, which provides a

---

[1] See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). While this motion was pending, the parties stipulated to the filing of a Fourth Amended Complaint ("4AC"). The 4AC is identical to the 3AC for purposes of the present motion and all citations to the 3AC correspond to identical portions of the 4AC.

2

centralized "menu" for Adult Check customers. Id. ¶ 25. Some of these sites are exclusive to Adult Check members. Id. ¶ 24. Further, Adult Check contains assurances that it monitors the quality of the various sites. Id. ¶ 27.

The Adult Check site asserts that "websites in the . . . program must be unique and they must pass a rigorous review from our staff to ensure that our customers are receiving a premium entertainment experience." Id. The site advertises over 10,170 hand-selected sites. Id.

The benefit for the affiliated websites within the Adult Check family is two-fold.[2] First, Cybernet pays a portion of its revenues to these websites. Id. ¶ 24. Second, the assurance that Adult Check provides to customers presumably increases the likelihood of visits to the sites, thereby increasing their value. Id. ¶¶ 25, 27. These benefits are highlighted by the way each inividual website automatically sends or directs non-Adult Check users who attempt to access the site to the Adult Check site. Id. ¶ 28.

The exact relationship between Cybernet, its Adult Check site and the affiliated sites is unclear. On the one hand, the Adult Check site, owned by Cybernet, advertises that it acts as a "partner" with the affiliated websites-going so far as to call the webmasters of such sites "Adult Check Webmasters." Id. ¶ 26. On the other, the rigorous review mentioned above and the

---

[2] When referring to the combination of the Adult Check site and the websites affiliated with it, the Court will refer to the "Adult Check family," in contrast to the "Adult Check site."

3

affiliated status of the websites leaves open the possibility that the websites linked to Adult Check are owned or run by other entities.

Perfect 10 has a variety of problems with the sites within the Adult Check family. Those problems have led to the present action. Apparently some sites copy images from Perfect 10's copyrighted works. Id. ¶ 33. Some sites include the Perfect 10 trademark, suggesting affiliation with Perfect 10; connection with Perfect 10 for pictures not related to Perfect 10's copyrights; or Perfect 10's approval of possible copying on the site. Id. ¶¶ 92, 93. Additionally, a variety of sites advertise pictures of celebrities in sexually explicit poses, but when one goes to the site, the pictures involve the bodies of different people with the heads of celebrities superimposed. Id. ¶¶ 35, 36. Finally, some of the sites use pictures of models without their permission. Id. ¶¶ 33, 35, 36. Perfect 10 claims some of these models have assigned Perfect 10 their right of publicity, while other pictures violate the publicity rights of third persons with whom Perfect 10 has no direct relationship. Id. ¶¶ 33, 35.

Perfect 10 alleges that Cybernet is not only aware of these various problems, but that it actively encourages these activities. Id. ¶¶ 27-32. According to Perfect 10, by disregarding the laws of copyright, trademark, publicity and unfair competition, the Adult Check family is able to entice more users and to provide its services at lower costs. Id. ¶¶ 1-3.

In the Court's previous order denying in part and granting

4

in part Cybernet's Motion to Dismiss the Second Amended Complaint, filed September 26, 2001 ("2AC Order"), the Court denied the majority of Cybernet's challenges to Perfect 10's claims. It did, however, grant the motion to dismiss Perfect 10's allegations of California unfair competition law based on copyright violations and granted Cybernet's request for a more definite statement with regard to Perfect 10's claims for violations of publicity rights, unfair competition, and the investment of racketeering proceeds in violation of 18 U.S.C. § 1962(a).

**III. ANALYSIS**

    **A. Legal Standard**

    Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

    In reviewing a Rule 12(b)(6) motion, the court must presume the truth of the factual allegations in the complaint, and draw all reasonable inferences in favor of the non-moving party. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); see also Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Dismissal under Rule 12(b)(6) is appropriate

"only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citations omitted). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the plaintiff's cliaim. See Usher, 828 F.2d at 561.

Under Federal Rule of Civil Procedure 8, a pleading shall contain "a short and plain statement of the claim showing that the plaintiff is entitled to relief." Moreover, "[t]he pleadings need not identify any particular legal theory under which recovery is sought." Crull v. Gem Ins. Co., 58 F.3d 1386, 1391 (9th Cir. 1995). It is enough that the complaint gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests so that the defendant can frame a responsive pleading. See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957). The Supreme Court has explained that the "liberal system of 'notice pleading'" does not require a claimant to set out in detail the facts upon which it bases its claim. See id.

**B. Applying the standard**

Here, Cybernet challenges four claims in Perfect 10's Third Amended Complaint:

    1) unfair competition (Lanham Act § 43(a); Cal. Bus. &

6

    Prof. Code § 17200)("claim seven");

    2) false advertising (Cal. Bus. & Prof. Code § 17500 et seq.)("claim eight");

    3) civil RICO,[3] investment of proceeds (18 U.S.C. § 1962(a))("claim nine"); and

    4) civil RICO, participation (18 U.S.C. § 1962(c))("claim ten").

The Court will analyze these arguments within the context of the claims that they attack.

### 1. The Unfair Competition Claims

Cybernet argues that the unfair competition claims (claims seven and eight) should be dismissed because they request damages and attorneys' fees, in addition to requesting injunctive relief. Def. Mot. at 5-8. Further, Cybernet contends Perfect 10 lacks standing to assert third-party rights as part of these claims. Def. Mot. 9-11.

#### a. Relief Requested

For the argument concerning damages and attorneys' fees, the Court concludes that it is unnecessary to address the argument at this juncture. Cybernet does not challenge the injunctive relief requested by Perfect 10. See 3AC ¶ 130. Challenging the other forms of relief requested does not challenge the underlying claim. See Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1142 (C.D. Cal. 2001)(citing Schwarzer, et al., Civil Procedure Before

---

[3]Racketeering Influenced and Corrupt Organizations Act.

Trial § 9:230 (2000)). But see Arnold v. United Artists Theatre, Inc., 866 F. Supp. 433, 435 (N.D. Cal. 1994)(considering motion to dismiss challenging request for damages). Therefore the Court denies the motion to dismiss the seventh and eighth claims of relief based on the demand for monetary damages and attorneys' fees.

### b. Standing

Cybernet argues that Perfect 10 is asserting third-party rights in these claims. Def. Mot. at 9-11. As a result, Cybernet believes Perfect 10 lacks standing under certain prudential doctrines applicable in federal court. Id. (citing Powers v. Ohio, 499 U.S. 400 (1991) and Viceroy Gold Corp. v. Aubry, 75 F.3d 482 (9th Cir. 1996)). Perfect 10, on the other hand, claims that it is asserting its rights to be free of unfair competition. Opp'n at 11-12. In its prior order, the Court concluded that Perfect 10 had alleged a competitive injury based on Cybernet's actions that was sufficient to meet Article III's standing requirements.

The standing inquiry is predicated on identifying whose interests are at stake and whose rights are being asserted. Here, three sets of interests are implicated: Perfect 10's, third-parties and their rights of publicity, and the general public's right to be free of fraudulent advertising. The Court notes that California Business & Professions Code § 17200 is meant to protect competitors, Barquis v. Merchants Collection Ass'n of Oakland, 7 Cal. 3d. 94, 109 (1972), and that its protections,

although borrowed from other laws, treat these violations as "unlawful practices <u>independently</u> actionable."[4] <u>Rothschild v Tyco Int'l (US), Inc.</u>, 83 Cal. App. 4th 488, 493-94 (2000)(emphasis added, citation omitted). Based on these considerations and Perfect 10's allegations of competitive harm, for present purposes the Court concludes that Perfect 10 is asserting its rights and need not further address the third-party standing issue at this time.[5] <u>See</u> <u>Viceroy</u>, 75 F.3d at 488-89 (non-union employer had standing to challenge statute, even though no standing on behalf of employees).

### 2. The RICO Claims

Cybernet argues that Perfect 10's RICO claims fail for several reasons. First, Cybernet maintains that Perfect 10 has failed to adequately allege "concrete injury." Second, Cybernet argues that any injuries Perfect 10 has alleged that derive from Cybernet's investment of funds are not derived from a source prohibited by RICO. In addition, it argues any allegations of reinvestment done simply to commit further predicate acts fails to adequately allege injury. Further, Cybernet claims Perfect 10 failed to adequately allege a structure for the enterprise.

---

[4] Cybernet has given the Court no argument to suggest that § 17500 does not also serve to protect competitors.

[5] The Court notes that this analysis is slightly different from that undertaken in evaluating preemption under copyright, which focuses on the extent of the rights protected by copyright, see <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1212 (9th Cir. 1998), while standing focuses on the suitability of particular parties to bring suit. <u>See</u> <u>Wilderness Soc'y v. Alcock</u>, 83 F.3d 386, 390 (11th Cir. 1996).

although borrowed from other laws, treat these violations as "unlawful practices <u>independently</u> actionable."[4] <u>Rothschild v Tyco Int'l (US), Inc.</u>, 83 Cal. App. 4th 488, 493-94 (2000)(emphasis added, citation omitted). Based on these considerations and Perfect 10's allegations of competitive harm, for present purposes the Court concludes that Perfect 10 is asserting its rights and need not further address the third-party standing issue at this time.[5] <u>See</u> <u>Viceroy</u>, 75 F.3d at 488-89 (non-union employer had standing to challenge statute, even though no standing on behalf of employees).

### 2. The RICO Claims

Cybernet argues that Perfect 10's RICO claims fail for several reasons. First, Cybernet maintains that Perfect 10 has failed to adequately allege "concrete injury." Second, Cybernet argues that any injuries Perfect 10 has alleged that derive from Cybernet's investment of funds are not derived from a source prohibited by RICO. In addition, it argues any allegations of reinvestment done simply to commit further predicate acts fails to adequately allege injury. Further, Cybernet claims Perfect 10 failed to adequately allege a structure for the enterprise.

---

[4] Cybernet has given the Court no argument to suggest that § 17500 does not also serve to protect competitors.

[5] The Court notes that this analysis is slightly different from that undertaken in evaluating preemption under copyright, which focuses on the extent of the rights protected by copyright, see <u>Kodadek v. MTV Networks, Inc.</u>, 152 F.3d 1209, 1212 (9th Cir. 1998), while standing focuses on the suitability of particular parties to bring suit. <u>See</u> <u>Wilderness Soc'y v. Alcock</u>, 83 F.3d 386, 390 (11th Cir. 1996).

Finally, Cybernet argues that participation by the various defendants has not been adequately alleged within the RICO framework. The Court will only address the first of these contentions - Cybernet's attack on Perfect 10's "injury" pleading.

In Perfect 10's 3AC, it alleges the following injuries stemming from the conduct of Cybernet and the other defendants, in relation to Perfect 10's RICO claims:

1) Cybernet uses fees collected to finance expansion of the Adult Check network, competition against Perfect 10 . . . to expand its customer base and to bring in, acquire and/or pay new Adult Check affiliated websites;

2) Cybernet has used racketeering proceeds to fund an ongoing advertising campaign . . . thereby expanding the customer base and website base of the Adult Check network and competing unfairly with plaintiff;

3) Cybernet utilizes racketeering proceeds to fund a bonus program, including referral, renewal and sweepstakes-like bonuses in order to induce websites to become and remain Adult Check "partners," thereby expanding the Adult Check enterprise and encouraging further procurement and distribution of images that violate the copyrights . . . of plaintiff and others; and

4) Cybernet has injured Perfect 10 because its participation in the Adult Check infringement ring promotes direct infringement of plaintiff's and others' copyrighted materials, and diverts customers and profits from plaintiff's non-infringing website.

As a result of these injuries, Perfect 10 requests "[that] defendants pay to plaintiff general damages in an amount to be proven." 3AC at 32.

Cybernet argues that these allegations are insufficient to plead a "concrete injury," citing Oscar v. University Students Co-Op Ass'n, 965 F.2d 783 (9th Cir. 1992). In Oscar, an apartment renter invoked RICO against drug-dealers in her neighborhood. The Ninth Circuit upheld the dismissal of her claim, with prejudice, for failure to allege a "concrete financial injury." Id. at 784, 787. It noted that she did not allege any out-of-pocket expenditures, nor did she allege that "she could sublet and the racketeering enterprise reduced the rent she could charge to sublet her apartment." Id. at 786. Her alleged injuries, including loss of use and enjoyment, and personal discomfort were not tangible injuries to property, either. Id. at 787. Cybernet asserts that Perfect 10's pleadings suffer from defects similar to those found in Oscar and directs this attack primarily at Perfect 10's section 1962(a) claim. Def. Mot. at 14-15.

The Court begins by noting the statute authorizing private actions under RICO, 18 U.S.C. § 1964(c), requires "injury to business or property." Within this circuit, a judicial gloss has

11

arisen - "injury" requires proof of concrete financial loss. See Oscar, 965 F.2d at 785. Subsequent to Oscar, this requirement was tied to the Supreme Court's requirement that a RICO plaintiff establish proximate cause, as well as implicating standing. See Imagineering, Inc. v. Kiewit Pacific Co., 976 F.2d 1303, 1311 (9th Cir. 1992)(citing Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992)). It has been consistently applied to defeat RICO claims where damages are considered too speculative. See, e.g., Mendoza v. Zirkle Fruit Co., 2000 WL 33225470 *1, *9-10 (E.D. Wash. 2000); Sasser v. Amen, 2001 WL 764953 *1, *9-10 (N.D. Cal. 2001); Sheperd v. American Honda Motor Corp., 822 F. Supp. 625, 629-31 (N.D. Cal. 1993). Moreover, this requirement must be met at the pleading stage and is generally interpreted as a strict requirement. See Oscar, 965 F.2d at 787 (pleading stage); Shepherd, 822 F. Supp. at 629, 631 (Imagineering implicitly suggested "exacting standard," granting motion to dismiss). But cf. Sierra Nat'l Ins. Holdings, Inc. v. Altus Finance, S.A., 2001 WL 1343855 *1, *14-16 (C.D. Cal. 2001)(interpreting Imagineering as articulating a multi-factor test, but still dismissing).

Despite the tension between this doctrine and standard notions of tort law and proof, see Sierra Nat'l, 2001 WL at *16 n.7, the Court concludes the Ninth Circuit's rule approaches, if it does not equal, the restrictive reading suggested by Oscar and Imagineering. The allegations in the 3AC for both the section 1962(a) and section 1962(c) claims fail to measure up to this

exacting standard. The Court therefore GRANTS the motion to dismiss the ninth and tenth claims with leave to amend within twenty (20) days of this Order's filing date.

**IV. CONCLUSION**

Based on the foregoing, the Court:

1) DENIES the motion to dismiss Perfect 10's seventh and eight claims under California Business & Professions Code §§ 17200 & 17500;

2) GRANTS the motion to dismiss Perfect 10's ninth and tenth claims under 18 U.S.C. §§ 1962(a),(c) with leave to amend within twenty (20) days from the filing date of this order.

**IT IS SO ORDERED.**

Dated: January 18, 2002

LOURDES G. BAIRD
United States District Judge

13